UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JAMES N.,[1]
        Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,
        Defendant.

NO. ED CV 18-1199-KS

MEMORANDUM OPINION AND ORDER

**INTRODUCTION**

Plaintiff filed a Complaint on June 4, 2018, seeking review of the denial of his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 11, 13.) On February 1, 2019, the parties filed a Joint Stipulation. (Dkt. No. 19 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision with either an award of disability

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

benefits or a remand of the case for further administrative proceedings. (Joint Stip. at 18.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the matter be remanded for further administrative proceedings. (*Id.* at 18-19.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 20, 2014, Plaintiff filed an application for SSI. (Administrative Record ("AR") 15, 143-52.) Plaintiff alleged disability beginning on January 1, 2010 because of depression, schizophrenia, anxiety, panic attacks, and a thyroid condition. (AR 57.)[2] After the Commissioner denied Plaintiff's application initially (AR 56) and on reconsideration (AR 65), Plaintiff requested a hearing (AR 86-88).

At a hearing held on January 30, 2017, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert. (AR 31-47.) On May 24, 2017, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI. (AR 15-25.) On April 12, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ made the following findings. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his application date of October 20, 2014. (AR 17.) At step two, the ALJ found that Plaintiff had the following severe impairment: schizoaffective disorder. (*Id.*) At step

---

[2] Plaintiff was 46 years old on his application date (AR 24) and thus met the agency's definition of a younger person. *See* 20 C.F.R. § 416.963(c).

2

three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (AR 18.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform work "at all exertional levels but with the following nonexertional limitations: he can perform unskilled work; and he can occasionally interact with others." (AR 19.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a cleaner. (AR 24.) In the alternative, at step five, the ALJ found that Plaintiff could perform other work in the national economy, consisting of the occupations of house cleaner, salvage laborer, and hand packager. (AR 25.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human*

*Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

The parties raise two issues: (1) whether the ALJ properly considered the treating psychiatrist's opinion or should have recontacted him for clarification; and (2) whether the ALJ properly developed the record regarding Plaintiff's mental condition. (Joint Stip. at 2.)

**I.** **The ALJ Properly Considered The Treating Psychiatrist's Opinion (Issue One).**

In Issue One, Plaintiff claims that the ALJ failed to properly consider the treating psychiatrist's opinion and should have recontacted the treating psychiatrist for clarification. (Joint Stip. at 3-6.)

///
///
///

4

## A. Legal Standard.

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. This is because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632. If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id*.

Here, the treating psychiatrist's opinion was contradicted by the opinions of two state agency psychiatrists. (AR 52, 60.) Thus, the ALJ could not reject the treating psychiatrist's opinion without stating specific and legitimate reasons supported by substantial evidence in the record.

## B. Background.

Plaintiff's treating psychiatrist was Dr. Kari Enge. (AR 285.) Dr. Enge diagnosed Plaintiff with a schizoaffective disorder, depressive type. (AR 305.) Plaintiff visited Dr. Enge approximately every three months and was prescribed Risperidone. (AR 38, 285, 297, 313.) During his visits with Dr. Enge, Plaintiff stated that he was doing "pretty good," "ok," "fine," or "not bad." (AR 286-90, 296, 314, 317, 319-21.) Dr. Enge reported that Plaintiff's psychosis was under control with treatment. (AR 287-90, 314, 316, 318-21.)

///
///

In May 2016, Dr. Enge completed a "Medical Opinion Re: Ability to Do Work Related Activities (Mental)." (AR 302-03.) Dr. Enge wrote that Plaintiff would have "no useful ability to function" or would be "unable to meet competitive standards" in several areas of mental functioning. (*Id.*) Plaintiff would have "no useful ability to function" in five areas: ability to maintain attention for a two-hour segment, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, ability to get along with co-workers or peers without unduly distracting them or exhibiting behaviorial extremes, ability to carry out detailed instructions, and ability to travel in unfamiliar places. (*Id.*) Plaintiff would be "unable to meet competitive standards" in nine other areas: ability to maintain regular attendance and be punctual within customary, usually strict tolerances; ability to sustain an ordinary routine without special supervision; ability to accept instructions and respond appropriately to criticism from supervisors; ability to deal with normal work stress; ability to understand and remember detailed instructions; ability to set realistic goals or make plans independently of others; ability to deal with stress of semiskilled and skilled work; ability to interact appropriately with the general public; and ability to maintain socially appropriate behavior. (*Id.*)

At the end of the opinion, Dr. Enge wrote that Plaintiff "has schizophrenia and becomes very uncomfortable around groups of people. This impairs his attention. Also gets distracted by voices." (AR 303.) Dr. Enge further wrote that Plaintiff "has been fired from 3 or 4 jobs in the past because of limitations from mental illness" and that "he would probably show up for work" but would be "unable to perform the job." (*Id.*) The ALJ gave "little weight" to Dr. Enge's opinion with the following explanation:

> I give little weight to this opinion because it is brief, conclusory, and inadequately supported by the objective findings. The psychiatrist did not provide an explanation for this assessment. He primarily summarized in the treatment notes [Plaintiff's] subjective complaints, diagnoses, and treatment, [and] failed to

provide medically acceptable clinical findings to support the functional assessment. This opinion is inconsistent with the objective medical evidence as a whole already discussed in this decision, which shows [Plaintiff] received only routine and conservative treatment. It is also inconsistent with [Plaintiff's] admitted activities of daily living.

(AR 22-23.)

### C. Analysis.

#### 1. Brief, conclusory, and inadequately supported.

The ALJ's first reason to give little weight to Dr. Enge's opinion was that it was "brief, conclusory, and inadequately supported by the objective findings," and that Dr. Enge failed to provide "an explanation for this assessment." (AR 23.) The ALJ further elaborated that Dr. Enge "primarily summarized in the treatment notes [Plaintiff's] subjective complaints, diagnoses, and treatment, [and] failed to provide acceptable clinical findings to support the functional assessment." (AR 23.)

The Court's review of the record on the whole reveals substantial evidence to support the ALJ's reasoning. Dr. Enge's opinion was brief, conclusory, and inadequately supported by objective findings, which reflect that Plaintiff's psychosis was under adequate control with treatment. (AR 287-90, 314, 316, 318-21.) Dr. Enge's treatment notes also reflected that Plaintiff made subjective statements that he was doing "pretty good," "ok," "fine," or "not bad." (AR 286-90, 296, 314, 317, 319-21.) Dr. Enge's clinical findings did not substantially support her opinion that Plaintiff had no useful ability to function or was unable to meet competitive standards in 14 areas of mental functioning. Thus, this was a specific and legitimate reason supported by substantial evidence for the ALJ to give little weight to the

treating psychiatrist's opinion. *See*, *e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[A]n ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.") (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Plaintiff disputes this reason by pointing to evidence of objective findings from 2015 and 2016. (Joint Stip. at 4.) As Plaintiff points out, medical notes from that time showed that he suffered from symptoms such as auditory hallucinations, anxious mood, anxious affect, difficulty with cognition and attention, average memory, flat affect, paranoia, ongoing auditory hallucinations, and blunted affect. (*Id*. [citing AR 309, 315-16].) But this evidence does not render the ALJ's finding erroneous or unsupported by substantial evidence. The same evidence cited by Plaintiff also showed that he needed medication support services (AR 309), that he had no complaints (AR 315), that he was "maintaining outpatient functioning in family setting" (*id*.), that he was directed to follow-up in three months (*id*.), that his psychosis was "under adequate control" (AR 316), and that he was "stable at baseline" (*id*.). Likewise, other evidence from the same period, 2015 and 2016, showed that Plaintiff had no increase in symptoms (AR 315), had no new problems or concerns (AR 316-17), and was stable with ongoing treatment (AR 318-19, 321). Given this evidence, the ALJ reasonably found that Dr. Enge's opinion was too extreme given the clinical findings. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

Plaintiff further contends that the ALJ should have recontacted Dr. Enge for clarification before rejecting her opinion as unsupported by clinical findings. (Joint Stip. at 4-5.) An ALJ's duty to seek additional information from a treating physician is triggered "only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Here, the

ALJ did not make a finding that Dr. Enge's opinion was inadequate to make a determination regarding Plaintiff's disability claim. Indeed, "[t]here was nothing unclear or ambiguous about what [Dr. Enge] said." *See McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011). Rather, the ALJ found that Dr. Enge's opinion was unsupported by clinical findings, which is not the same as characterizing it as unclear, ambiguous, or inadequate to make a disability determination. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding that a treating physician's opinion that the ALJ rejected because it was contradicted by clinical notes was not the same as an "ambiguous" or "insufficient" opinion that required the ALJ to recontact the treating psychologist); *see also Thomas*, 278 F.3d at 958 (recognizing that a "contradictory" opinion by a treating physician is not the same as an "inadequate" one). Thus, the ALJ was not required to recontact Dr. Enge for clarification.

Finally, Plaintiff contends that, contrary to the ALJ's finding that Dr. Enge "did not provide an explanation" for her opinion, Dr. Enge did in fact provide such an explanation. (Joint Stip. at 5.) As Plaintiff points out, Dr. Enge stated multiple times that Plaintiff was incapable of competitive employment, both in her opinion itself and in her treatment notes. In her opinion, Dr. Enge wrote that Plaintiff "has schizophrenia and becomes very uncomfortable around groups of people. This impairs his attention. Also gets distracted by voices." (AR 303.) Dr. Enge further wrote in her opinion that Plaintiff "has been fired from 3 or 4 jobs in the past because of limitations from mental illness" and that "he would probably show up for work" but would be "unable to perform the job." (*Id*.) And in her treatment notes, Dr. Enge wrote that Plaintiff "functions in a home setting, but in a work environment his psychotic symptoms . . . would quickly worsen, his concentration would suffer, and he would be likely to become agitated and irritable." (AR 318.) Similarly, Dr. Enge wrote elsewhere in her treatment notes that Plaintiff "would not be able to maintain employment without decompensating" (AR 295) and "would not be able to hold a job" (AR 314).

///

///

A treating physician's opinion on the ultimate issue of whether a claimant can work is competent evidence that an ALJ must consider. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); Social Security Ruling ("SSR") 96-5P, 1996 WL 374183, at *5 ("Such opinions on these issues must not be disregarded."). Here, however, the ALJ did consider Dr. Enge's conclusion that Plaintiff was incapable of competitive employment but gave that conclusion little weight because it was inadequately explained. As noted, Dr. Enge's treatment notes contained substantial evidence that, with treatment, Plaintiff was doing well and his mental symptoms were adequately controlled. Dr. Enge's rationale that this positive outcome would change if Plaintiff tried to work was reasonably rejected as unsupported conjecture. "A treating physician's evaluation of a patient's ability to work may be a useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one." *McLeod*, 640 F.3d at 884. "The relationship between impairment and disability remains both complex and difficult, if not impossible, to predict . . . The same level of injury is in no way predictive of an affected individual's ability to participate in major life functions (including work)." *Id*. (citation and internal quotation marks omitted). Dr. Enge's prediction that Plaintiff would be unable to maintain competitive employment was not substantially supported by the objective clinical findings. Thus, the ALJ properly rejected Dr. Enge's opinion about Plaintiff's ability to work as inadequately explained.

### 2. Routine and conservative treatment.

The ALJ's second reason to give little weight to Dr. Enge's opinion was that it was "inconsistent with the objective medical evidence as a whole already discussed in this decision, which shows [Plaintiff] received only routine and conservative treatment." (AR 22-23.) As noted, Plaintiff's treatment consisted primarily of Risperidone (or Risperdal), an antipsychotic medication used to treat schizoaffective disorders. (AR 38, 285, 297, 313.) However, the Court concurs with other district courts that have found antipsychotic medications such as Risperidone do not qualify as routine or conservative treatment. *See Faber v. Berryhill*, 2017

WL 6761936, at *10 (S.D. Cal. Dec. 29, 2017); *Carden v. Colvin*, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014); *see also Gidley v. Colvin*, 2013 WL 6909170, at *9 (N.D. Ind. Dec. 30, 2013) ("It is not clear that [the ALJ] would have reached the same conclusion that [the claimant] had conservative treatment if he considered all of [the claimant's] medications" including Risperdal). Although the record does show that Plaintiff was able to control his symptoms with Risperidone, such treatment does not qualify as conservative. Thus, this was not a specific and legitimate reason to reject Dr. Enge's opinion.

### 3. Activities of daily living.

The ALJ's final reason to give little weight to Dr. Enge's opinion was that it was inconsistent with Plaintiff's "admitted activities of daily living." (AR 23.) Elsewhere in the opinion, the ALJ repeatedly noted that Plaintiff's admitted activities of daily living included going for walks, preparing meals, performing household chores, driving, shopping in stores, running errands, managing his own finances, selling goods on eBay, and watching television. (AR 18, 20, 21; *see also* AR 39-41, 178-79, 239-40.)

An ALJ may discount a treating physician's opinion that is inconsistent with evidence of the claimant's daily activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding the treating physician's opinion "inconsistent with the level of activity that [the claimant] engaged in by maintaining a household and raising two young children, with no significant assistance from her ex husband"). Here, Dr. Enge's opinion that Plaintiff had "no useful ability to function" in areas such as maintaining attention for a two hour segment, carrying out detailed instructions, or traveling in unfamiliar places (AR 302-03) was inconsistent with Plaintiff's statements that he can perform household chores, shop in stores, run errands, manage his own finances, and sell goods on eBay (AR 39-41, 178-79, 239-40). Thus, this was a specific and legitimate reason based on substantial evidence to give little weight to the treating psychiatrist's opinion.

11

Plaintiff disputes this reason by arguing that the ALJ failed "to provide an accurate picture of how limited these [activities] are" because, for example, Plaintiff needed reminders to perform chores. (Joint Stip. at 5.) But even if Plaintiff's characterization of his daily activities were correct, it would not invalidate the ALJ's reasoning. Plaintiff's ability to perform such activities, even on a limited basis, would show that he had at least a "useful ability to function" in areas such as maintaining attention for two hours, carrying out detailed instructions, and traveling in unfamiliar places, which was inconsistent with Dr. Enge's opinion that he had "no useful ability to function" in those areas (AR 302-03). Thus, evidence of Plaintiff's daily activities, even on a limited basis, was a specific and legitimate ground to give little weight to Dr. Enge's highly restrictive opinion. *See Rollins*, 261 F.3d at 856.

### D. Conclusion.

The ALJ's characterization of Plaintiff's treatment with Risperidone as routine and conservative did not provide a specific and legitimate reason to reject the treating psychiatrist's opinion. However, the error was harmless because the ALJ otherwise stated two specific and legitimate reasons, based on lack of clinical support and evidence of Plaintiff's daily activities. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[W]e have adhered to the general principle that an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination") (citation and internal quotation marks omitted). Thus, Issue One does not warrant reversal.

## II. The ALJ Did Not Err By Failing To Develop The Record (Issue Two).

In Issue Two, Plaintiff claims that the ALJ erred by failing to develop the record about Plaintiff's mental condition, which was relevant to the issues of Plaintiff's RFC and subjective symptom testimony. (Joint Stip. at 10-14.)

///

### A. Legal Standard.

It is well-established that the ALJ has a special duty to fully and fairly develop the record to assure that the claimant's interests are considered, and that this special duty exists even when the claimant is represented by counsel. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *see also Garcia v. Commissioner of Social Sec.*, 768 F.3d 925, 930 (9th Cir. 2014). "An ALJ's duty to develop the record further is triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

### B. Analysis.

The ALJ determined, as noted above, that Plaintiff had an RFC to perform work "at all exertional levels but with the following nonexertional limitations: he can perform unskilled work; and he can occasionally interact with others." (AR 19.) The ALJ also rejected Plaintiff's subjective symptom allegations, particularly because of the nature of his mental health treatment. (AR 21-22.) Plaintiff contends that these findings were erroneous because the ALJ failed to develop the record.

Plaintiff contends that the ALJ impermissibly "played doctor" and should have developed the record by consulting a mental health professional, such as an examining physician or a medical expert, who could have given an expert opinion about Plaintiff's mental limitations. (Joint Stip. at 11, 14.) But the record did contain expert opinions by mental health professionals. Two state agency psychiatrists found that Plaintiff did not have a severe mental impairment with more than a minimal effect on his capacity to do basic work activity. (AR 52, 60.) The ALJ found the state agency psychiatrists' opinions to be insufficiently restrictive (AR 23) and thus found that Plaintiff had a severe mental impairment that warranted nonexertional limitations consisting of a limitation to unskilled work with occasional

interaction with others (AR 19). It is inaccurate to say under these circumstances that no mental health professional provided a basis for the ALJ's RFC determination or that the ALJ made such a determination out of whole cloth.

To be sure, no mental health professional gave an opinion that was *identical* to the ALJ's mental RFC determination here, for unskilled work and occasional interaction with others. (AR 19.) But this did not mean that the ALJ was required to obtain evidence from the medical sources Plaintiff suggests, such as an examining physician or a medical expert, to support the RFC determination. (Joint Stip. at 14.) An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *5 ("[A] medical source statement must not be equated with an administrative finding known as the RFC assessment."); *Lynch Guzman v. Astrue*, 365 F. App'x 869, 870 (9th Cir. 2010) ("Residual functional capacity is an administrative finding reserved to the Commissioner."). Plaintiff has not cited any binding legal authority for the proposition that an ALJ's RFC determination must be identical to an opinion by a medical professional, particularly where, as here, the record contains medical opinions stating that a claimant is more capable than the ALJ's RFC determination reflects. *Cf. Mokbel-Aljahmi v. Commissioner of Social Security*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citations omitted); *Winn v. Commissioner, Social Security Administration*, 894 F.3d 982, 987 (8th Cir. 2018) ("The ALJ was not required to accept any physician's opinion regarding this element of Winn's RFC. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.") (citation and internal quotation marks omitted). The ALJ evaluated in sufficient detail all the probative medical evidence in the record before determining Plaintiff's mental limitations. Thus, the ALJ did not fail to develop the record in this regard.

///

Plaintiff similarly contends that the ALJ lacked the qualifications of a medical expert to assess Plaintiff's testimony about his mental health treatment. (Joint Stip. at 13.) The ALJ discounted Plaintiff's testimony in part because his mental health treatment, which consisted of therapy sessions every three months and Risperidone (AR 38), was not "the type of medical treatment one would expect" and Plaintiff failed to "offer a sufficient explanation" for not seeking more aggressive treatment (AR 22), It is unnecessary, however, to resolve the question of whether the ALJ was qualified to assess the appropriateness of Plaintiff's treatment because the outcome would not change even if the ALJ was not qualified. Regardless of the ALJ's qualifications, the Court disagrees, as discussed above, that antipsychotic medications such as Risperidone qualify as conservative treatment. Thus, such a rationale would not be a clear and convincing reason to reject Plaintiff's testimony. But the ALJ stated other, independent reasons to discount Plaintiff's testimony (AR 21-22), and Plaintiff does not attempt to dispute them. Specifically, the ALJ discounted Plaintiff's testimony because "with treatment, [he] was noted to be stable," and because Plaintiff's "activities of daily living [were] inconsistent with [his] statements concerning the alleged intensity, persistence, and limiting effects of symptoms." (AR 21.) These were clear and convincing reasons to reject Plaintiff's subjective symptom allegations. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medications are not disabling); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ recognized that this evidence [of daily activities] did not suggest Valentine could return to his old job . . . , but she thought it did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

In sum, any error by the ALJ in characterizing Plaintiff's mental health treatment as conservative was inconsequential to the ALJ's other reasons to discount Plaintiff's testimony. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (holding that invalid reasons to reject a claimant's testimony will be harmless error if the ALJ otherwise stated valid reasons). Moreover, because the ALJ stated valid reasons not to credit

Plaintiff's testimony, the ALJ was not required to incorporate Plaintiff's testimony into the RFC determination. *See Bayliss*, 427 F.3d at 1217 (where an ALJ properly rejected a claimant's testimony, the RFC determination need not depend on the claimant's subjective complaints). Thus, this issue does not warrant reversal.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: July 31, 2019

/s/ Karen L. Stevenson
_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE